Good, the clerk will call the next case, please. 3090353 Richard S. Ellis, appellant by John Doak, v. LGRT, incorporates et al. affluence by Brent King. Mr. Doak, good afternoon. Good afternoon. May it please the court, counsel, my name is John Doak. I represent Richard Ellis, the plaintiff appellee in this cause of action. Before I begin, I wanted to just comment quickly on the standard of review. There seems to be a little bit of a dispute about that. In the briefs, our position is that the court has de novo review of this cause of action. This matter was decided on motion without evidentiary hearing, without the court considering evidence. I've cited in the brief and in our reply brief the cases indicating that where the court refuses to grant an evidentiary hearing, that the standard of review is de novo, and particularly those cases which say, regardless of whether they refuse to grant it or not, if there is no evidentiary hearing and it's just decided on the documents submitted, that it shall be a de novo review. What we're asking the court to do here today is to reverse the dismissal of this cause of action for lack of jurisdiction. We believe, as I've briefed and as I'll argue here today, that Judge Messich applied the wrong standard in dismissing this case. We disagree with his analysis even under that standard, but ultimately, we believe he applied a general jurisdictional analysis as opposed to a specific jurisdictional analysis within the long-arm statute. When you look at this case, the first thing that would seem to pop out to me is, why are you asking for four defendants and jurisdiction over four defendants when you had a contractual relationship with one entity? And I think what that goes into is kind of the whole basis for why we believe this is a consumer fraud case. Richard Ellis, my client, simply wanted to store his collector cars in a fashion that's very common for antique or collector car people, where you have a car drive in and it lifts it up and you can have another car come in underneath it and you can maximize storage space. He was very familiar with the industry. He was very familiar with the players in this industry. Subscribed to the Hemings Motor News, which is a very well-respected national magazine that caters to the collective car market. He saw this ad in this magazine for a new lift company. Like many consumers, you might know a business name. You don't necessarily know who you're dealing with. He didn't know this company, so he called them. He said, hey, I'm interested in your lifts. They said, go to the website. He'd already looked at the website and saw that they were very similar to Backyard Buddy's lifts. And he asked them. He said, these look very much like Backyard Buddy. They told him, we're a bunch of disgruntled former employees of Backyard Buddy. We started our company. It's a similar product, very good product. And by all accounts, Mr. Ellis would establish that those Backyard Buddies are the standard in the industry for the safest, most well-constructed lifts. The record, though, establishes that Richard Ellis was being duped. Backyard Buddy was the puppet master in the background pulling the springs. Jason Wood and Larry Gross are the admitted owners of Autobutler, LGRT, DBA Autobutler lifts. And they were the ones who wrote checks to themselves, cut bank accounts, et cetera. But essentially, they were running Backyard Buddy. And he was lied to about this fact. So what eventually happens is a series of emails on price quotes with Autobutler lifts. He never gets his product. This goes on for several months. Phone calls are made back and forth. Where's my product? Eventually, they send a letter to him saying, yes, pursuant to our conversation, they're going to ship this week. If you don't get them all this week, next week we'll send you the remaining components. Unbeknownst to my client, there was no Mexican manufacturer making these products at that point. They had shut down and fled. The defendants, LGRT, Inc., and Autobutler lifts knew this. They knew that the company had no product, that the people weren't involved. And that's when they cut their own checks, shut everything down, et cetera. There was a criminal investigation in Ohio about this aspect. And my client, through various contacts in his own research, his own efforts, found that Backyard Buddy, Larry Gross, and Jason Wood were all involved in all of this. That all of the bookkeeping and accounting for Autobutler was really going through Backyard Buddy. That the design was, in fact, taken from Backyard Buddy. And there's e-mails back and forth from Backyard Buddy on those issues, indicating how the design changes would be made from Backyard Buddy to Autobutler lifts. Various other instances of things like that. So what he essentially really found was that although he thought he was dealing with Autobutler lifts, behind the scenes he's really dealing with Backyard Buddy. But Backyard Buddy has this reputation in the industry, right? Yes. But your client wasn't reliant on that because he had no idea that they were back. Exactly. The counter is the thing where you think you're dealing with these people, but you're saying they've got some kind of shell corporation, where this is just the opposite. He has no knowledge of it, so he's not acting in any reliance upon Backyard Buddy's reputation in the industry. Right. And what eventually happens is Autobutler lifts goes out of business. And he's looking around and says, okay, Autobutler's out of business. What happened? Everything was right there at Backyard Buddy. That's why Backyard Buddy is brought into the suit. Now, there's various things. Obviously, the first and foremost issue is who's responsible for what? And that's why we have brought all of the parties in, in an effort to have the litigation under the Illinois Consumer Fraud Act for the false representations of who he was doing business with, what was going on, where are these shipments coming back and forth from, and who's taking the money and who's not. Because in reality, whenever a party does business with somebody, you don't really know unless you go into the shop physically and purchase something who it really is that's selling. They could tell you who it is, but you don't know. And we've amassed all of this information now to give us that. But the real issue really comes down to jurisdiction. Who do we have jurisdiction over? Who do we not have jurisdiction over? The trial judge said, you don't have jurisdiction over anybody. We don't believe that's accurate. We believe we have jurisdiction over all four of them for various reasons. The biggest issue, though, is the long-arm statute, which the trial judge didn't even consider. And we told him, be careful, Judge. The arguments are coming here under general jurisdiction. This is a specific jurisdiction case. And when he announced his ruling, he was very scant, but he said, there is no evidence that any of these defendants do business with the type of degree of permanency that would be required for jurisdiction. But the long-arm statute and specific jurisdiction don't require that. And, in fact, specific jurisdiction is really kind of a shorthand way of saying long-arm jurisdiction under 735 ILCS 5-209A. What we're talking about in this case is a cause of action arising out of either A or 1, under the statute, transaction of any business within this state, or 7, the making or performance of a contract or promise substantially connected to the state. Now, that then has to come within the context of 14th Amendment constitutional due process for enough minimum context that due process is not offended. Our primary argument in this case is this contract, or this case, arises out of the transaction of business within this state. That transaction was Richard Ellis' contract with Otto Butler to purchase 11 Lyfts to be delivered to the state of Illinois in Rock Island County. He paid his money. The Lyfts never came back to Rock Island County. The substantial nexus is the defendant's agreement to produce the Lyfts, ship them to Rock Island County. They were never shipped. He never got his money back. So our argument is that clearly arises out of the context of this, and there is sufficient minimum context for the state of Illinois. Primarily, as I said, the ultimate performance of the contract was the delivery in Illinois of 11 automobile Lyfts. In addition to that, we look at what other issues transacted between the parties. We have the defendants purposefully sending a national magazine out advertising. They have an Internet site, which in and of itself I don't think is ever sufficient for jurisdictional purposes. We have my client calling them. We have them sending six emails back and forth, getting into the terms, knowing that they're going to be shipping these back to Illinois. There's a huge delay. They don't come. Well, but now you seem to be talking about the defendants collectively, and as a whole. Who sent those? That email was—those emails were sent from Otto Butler Lyfts. The emails directly to the sale itself are the only emails—are the only things that deal with Otto Butler Lyfts. Any other emails that are within the record all deal with the transactions between the guy manufacturing and his communications with Backyard Buddy. Because all of—the only thing that really happened with Otto Butler Lyfts is they had a little storefront. They had a computer, a desk, a phone, and a sales rep. Everything else was done through Backyard Buddy. And we believe the record is very clear on that in establishing that that's how they did business. I referenced page 12 of our brief, the Compass case, which is the first district case out of 2008. And I think that case shows that the links in modern technology, what happens, and why the long-arm jurisdiction would be appropriate in this case. In that case, there was a plaintiff and a defendant that had a contract. And the contract was a plaintiff's Texas subsidiary for delivery in Louisiana. Invoice was sent to the Illinois Parent Corporation. Checks came from the Illinois Parent Corporation. Settlement—there was a breach. Settlement discussions occurred through the Illinois Parent Corporation's negotiator in Chicago, and the lawsuit was brought in Illinois. The court found sufficient minimum contacts because they paid the invoice from Illinois, and there were negotiations with the Illinois Parent Corporate Rep. They said this arises out of that transaction. There is enough contact, the payment of the invoice from Illinois and those negotiations, that it would not offend due process. Well, in my case, we clearly have delivery in Illinois. That case was delivery in Louisiana. The party is in Illinois, Mr. Ellis. The payment came for the credit card from Illinois. So all of those factors are stronger than what we have in the Compass case. So we believe that when you look at the specific jurisdictional issue, clearly that specific jurisdiction exists on the basis of the long-arm statute. That's not the end of it, though. Then you have to get into the reasonableness to litigate in Illinois under the due process clause. Trial court did not address that issue, but we believe that that's an easy win for the plaintiff-appellant in this case because under the reasonableness standard, it is the defendant's burden to show it's unreasonable. Not only is it their burden to show that it's unreasonable, the cases have described it as a compelling burden, a compelling burden to show that there's something that is fundamentally unfair about having the case in Illinois. And the Commerce Trust case not only says that that burden is rarely met, but when you have a consumer fraud case, you have a fundamental state policy of consumer protection that militates towards our case, and that's what we do have. We have a case involving the Consumer Fraud Act. That's what we're seeking to do, and that's why we believe that there's a fundamental fairness issue for us to be able to have that case here in Illinois. Now, getting back to this issue, well, why did you bring these other parties in, and how do you have jurisdiction over them? We believe it's all tied in together, and the cases that we've cited for that talk about the issue, not in terms of how the trial court looked at it, saying, well, I'm not going to pierce the corporate veil today, counsel, that's not what we're here about. Those arguments are piercing the corporate veil solely for purposes of jurisdiction, to show that the relationships are there, the control is there, so that what we're actually showing is my client has, in fact, contracted with them. It's not a binding issue. Well, but have you had some case law about piercing the corporate veil for jurisdictional purposes only? Certainly. It's cited in my brief under page 28 of my brief, the Illinois Bell Telephone Company v. Global Naps case, which is a Seventh Circuit case from 2008. And the court at that time said the only question is whether plaintiff produced enough evidence to bring Ferris Minor within the personal jurisdiction of the court. It said we're not ruling on the corporate veil as a matter of the substantive issues. We're only saying is there enough evidence to enable the company's owner to be brought within the personal jurisdiction of the district court. And that's exactly what we're doing here. We're showing the unity of interests, the control, that there really aren't separate personalities. This is one business, and they were just trying to do something a little bit different. Did you ask for an evidentiary hearing, though? I did, and I was refused. Okay, because I don't know how anybody could ever decide these issues without an evidentiary. I was told that there was absolutely no reason for an evidentiary hearing, Your Honor. Now, I didn't appeal that issue because I have de novo review at this level, and it's a whole different matter trying to get an evidentiary hearing but then go back to the same trial court who has the hostility towards my case. So I have to pick my battles. And unless there's other further questions, I know I'm real short on time here at this point. Okay, thank you. Mr. Hayden, good afternoon. Good afternoon. Ma'am, please record. I'd first like to address the standard of review issue Mr. Doak brought up. He just said that he requested an evidentiary hearing, but the only evidence that we recall that he tried to offer was at the hearing on our motion to dismiss, which Judge Message said was very similar to the evidence that was already on the record in the filings back and forth. For that, we don't think there was an evidentiary hearing requested. Further, the evidence that was proffered that day was to go about theories of liability, of who would be liable for LGRT, not directly for jurisdictional purposes. So I'd like to now tackle a presumption made by the appellant in his brief in this appeal. He argues that because LGRT failed to address the specific jurisdiction issue in its reply brief that he's conceived this issue. Well, that's simply not true. Specific jurisdiction is analyzed in this court based on a minimum context type analysis, which is outlined in the Commerce Trust case. Personal jurisdiction involves a three-step analysis, whether there's minimum context, whether the action arises out of those contexts, and whether it's reasonable to litigate in this form. Defendant's reply brief in this appeal did attack both that there were not sufficient minimum context and that it's unreasonable to litigate in Illinois. So although it didn't specifically say the word specific jurisdiction, the brief did address those issues raised in the plaintiff's appeal. Next, I'd like to move on to the issue that the plaintiff has argued quite extensively in his appeal here, that there's an apparent subsidiary relationship between Backyard Buddy and LGRT. There's affidavits in the record by both Larry Gross and Jason Wood stating that they are the owners of LGRT. Now, these two men from Ohio are employees of Backyard Buddy, but they've also stated in affidavit form that they are not in any way ownership, have any ownership or director or officer control over Backyard Buddy. This gets to the issue with regard to the jurisdiction over Backyard Buddy that Counselor made. Piercing the corporate veil is a way to impose liability on a corporation. We don't have here, it's not, as Counselor Doak argued, it's not a way to impose jurisdiction on a party. It's a way to enforce liability. Based on Mr. Doak's attempted proof of who owns Backyard Buddy at the lower level, he's attempting to exercise jurisdiction over a parent corporation. Again, the owners of LGRT are Larry Gross and Jason Wood. Backyard Buddy has no ownership interest in LGRT. So we clearly do not have a parent subsidiary type relationship here for purposes of getting Backyard Buddy in under a corporate veil type jurisdictional argument that Counselor's made. Isn't that one of the reasons that he wanted to have an evidentiary hearing? Because a lot of your clients have filed these affidavits that state that. I mean, his argument is saying that it was mere subterfuge, that it was just a veil, that they really were in control and that they had this aftermarket product that they were trying to market and sell and that when they knew, when he questioned them about that, they weren't honest about it. And isn't that the purpose of having the evidentiary hearing that he had requested is to flesh that out? There were some police reports and some other things that... Right. I believe you're correct, and that would be the purpose of a hearing, Your Honor. But like I said, I don't believe there was a hearing requested. He just proffered evidence, a transcript that was never authenticated of a police report, made in regard to a police investigation of LGRT in Ohio, which there's a contingent litigation in Ohio, where the defendants here have sued the police department for making these recordings, not disclosing that there was recordings. We're not sure if it was legal under Ohio law to actually make these recordings that counsel has subpoenaed in this matter. And again, they were never authenticated in front of anybody, in front of the court, especially as evidence. Next, I'd like to move on to jurisdiction. Counsel has spent his time previously on the issue of specific jurisdiction. As outlined in the Commerce Trust case, in accordance with due process, a non-resident defendant here must have minimum contacts with Illinois. The action must rise out of that contact, and it must be reasonable to litigate the case in Illinois. The Illinois courts have held that mere existence of contract does not establish a minimum contact itself, or existence of a contract or agreement, as alleged here. Minimum contact is created if a non-resident has engaged in significant activities within the form state or created continuing obligations of a citizen of this state. Looking at the facts of this case, the contract initiated here, or the negotiations initiated, were initiated by the plaintiff here in reaching out into Ohio to initiate these negotiations. Well, that's one way to look at it. I mean, another way to look at it, though, is that you kind of initiated the ask for somebody to apply. Putting the ad out there, the purpose was hopefully people would respond to that ad. Okay. That's a valid point, yeah. But in the actual transaction alleged, there was the e-mails all that were between LGRT and Mr. Ellis here were all related to one single transaction that was to take place. LGRT was never going back to Mr. Ellis to solicit more business, to do more transactions, to create a continuing relationship with this. It was just one single transaction that was going to happen. Part of the continuing obligations discussed in the Commerce Trust case also relates to future obligations. The obligation that LGRT undertook was to deliver auto lifts. When they realized that they would not be able to do that, the only obligation going forward that they had was to refund the money that Mr. Ellis has alleged that he paid. Did he do that? There was two payments were made. In Plaintiff's initial brief, he alleged that LGRT has received credit card payments, plural, and checks, plural, from Richard Ellis. In reality, Mr. Ellis paid LGRT $3,170 in the credit card payment of his own credit card, and he wrote a $25,000, $650 check from a Stuart Levine in Massachusetts to pay for the balance. The only money that came from Illinois was $3,170 on a credit card, which under our belief has later been refunded to the credit card account. So the only future obligation in Illinois was to refund the credit card there. Your clients didn't repay that $3,000, isn't it? Wasn't it that Mr. Ellis made a claim to his credit card company that he had been defrauded in some nature, some manner? I mean, he didn't actually get money back from auto butler lifts or from Mr. Wood, correct? I don't know how the facts work in that, Your Honor. But it's my understanding that the payment was credited back onto his credit card account in the end. So the money was credited back, that $3,000 and change amount. But the other money, I mean, if I purchase something, but I'm getting money maybe from my mother or something to pay for it, and I don't get it, doesn't my mother still get entitled to that money back? Correct. The money came from a Stuart Levine in Massachusetts, though. It didn't come from Illinois. The check was written and drafted in Massachusetts, sent to Ohio from Massachusetts. It was never sent from Illinois. It wasn't sent from anybody in Illinois. Was that money ever refunded? That has not been, no. The one payment on a credit card and the one check, though, is in contrast to the Compass case, which referenced a number of checks, implying that there was multiple payments being made, as opposed to one payment on a credit card and one payment by a check. It seems to me that the plaintiff, in his briefs, mistakenly writing credit card payments in plural and checks in plural is trying to draw his case closer to the Compass case, which is simply not true. Also, in a specific jurisdiction argument, the court must factor reasonableness for Illinois litigation, that it's reasonable for the action to be held here. The defendants in this matter are all from Ohio. If you look at them on the whole, there's two corporations that are located in Ohio, and there's two named defendants, individuals in Ohio. All the book of business, all the corporate records, business accounts, bank accounts, all that evidence is located in Ohio. Every witness that defendant will call, like a— That's a form of convenience argument, not a jurisdiction argument, isn't it? Your Honor, it goes to the burden placed on the defendant in defending the action in Illinois, which is one of the reasonableness factors laid out by the Commerce Trust case. If a party is sitting in Arkansas and ripping off Illinois consumers, assuming the truth of that, is there anything unreasonable about making that person come to Illinois and answer in an Illinois court for stealing money from Illinois residents? Well, I think your question, Your Honor, goes to the totality of weighing all the circumstances around the minimum contacts plus the reasonableness, which one of the factors is the burden on the defendant to come to Illinois to litigate the case. Also, witnesses, namely police officers, investigators that were involved in the criminal complaint, are all located in Ohio. So you'd have the burden on the plaintiff—or, excuse me, the defendant— to get everyone to Illinois would be severe, as opposed to the only party known that's going to be called from the plaintiff is the plaintiff himself. Further, another factor to go to the reasonableness argument of litigating in Illinois is whether the plaintiff can obtain effective relief in Illinois. And the plaintiff in his brief has argued that the statute of limitations in an Ohio consumer fraud action like he's brought here, the statute of limitations ran in April of 2009, and he's saying that if he had to go there now to file it, it would be unjust because he wouldn't be able to file that same action. However, he fails to note that this action in Illinois was brought in 2008. He could have very well, at that time, instead of picking Illinois as the forum, picked Ohio as the forum, been within the statute of limitations. So he could have—obtaining effective relief was definitely possible in Ohio, which he seems to claim now it's not. So as a conclusion, I'd like to say that there's insufficient minimum contacts and it's not reasonable to litigate this in Illinois. The burden on the defendant would be too heavy to get to it. Even if he establishes jurisdiction, there's nothing stopping your view from coming in, in a trial court, and filing an interstate form on a convenience motion to have it heard back in Ohio, except most people have to wait to stick to Ohio's statute of limitations. That could be done. Again, there's a difference between the form and inconvenience in jurisdiction. Yes, sir. And lastly, I'd like to say that the backyard buddy, although named as a defendant, there is no parent-subsidiary relationship there, which all the evidence— or excuse me, the cases cited by plaintiff in his brief go to the fact that you can exercise jurisdiction over a parent based on the actions of a subsidiary, but there was no parent-subsidiary relationship here. There was no ownership interest from one over the other. We could remand for that, couldn't we? Excuse me? We could remand for an evidentiary hearing on the parent-subsidiary relationship if we find jurisdiction. Yes, that'd be— Mr. Doak? If it pleases the Court, just a couple of notes on several of the issues that were brought up. Counsel talked about the affidavits of Mr. Gross and Mr. Wood. I'd remind the Court, as indicated in our brief, that the later affidavits of Mr. Gross and Mr. Wood were submitted to the Court but not served on me until after the hearing, three days after the hearing, so we would not have had an opportunity to respond to those. But I don't think it matters. Did you raise that at the Crown level? I filed a motion to strike them, but by the time we were going to get a hearing, the 30 days was going to be up for an appeal, so I filed the appeal rather than set that for a hearing because the main issue was the dismissal of the jurisdictional aspect. But it doesn't matter because, as I analyzed it, all facts in a motion to dismiss are to be construed in favor of the non-moving. We were the non-moving. We had facts that disputed those allegations already in the record, so it was kind of an irrelevancy to do that because, to the extent those conflicted with the evidence that we'd already put into the record, the documentary evidence, that was supposed to be construed in our favor. So, in a sense, it was really irrelevant. There's a comment with regard to the evidentiary hearing that the non-evidentiary hearing, and my ability to get that that was denied, I made an offer of proof. And now the criticism is, well, you don't have an authentication of the documents you put in your offer of proof and what you said to the court would be the testimony. But that's what the purpose of the offer of proof is, is to say to the court, you didn't allow me to introduce this evidence. Here it is. This is what I would have introduced so that the reviewing court can take a look at it and see what would have been there. And I tried to introduce my client to testify. I presented information on what he would testify to. I wanted to question Mr. Goodman. What happened when you tried to call your client? I tried to call my client, and I was told that I would not have an evidentiary hearing. And I said, Your Honor, we have an hour. I want to have an evidentiary hearing. And he said, You only have an evidentiary hearing right where I deem that it's relevant to the case, and I don't see any facts that can change from an evidentiary hearing standpoint. This is only about jurisdiction, whether they were doing business in the state of Illinois. And so at that point, I made my offer of proof. I made an extensive offer of proof. Let me ask one other question real quickly, and that is, who got ripped off here? Who do you say got ripped off? Was it your client, his credit card dealer, Mr. Levine? Mr. Levine owed my client money. And as opposed to my client getting the money from Mr. Levine and then sending it on himself, he simply asked Mr. Levine to send a check directly with the notation that this was for his account to get these lifts, which was done. That brings up the credit card issue. In reviewing the documents, my client has, I believe there's an affidavit in there saying he did not get refunded. The police report, the defendants indicated that they believed all credit cards were refunded. The problem with my clients is it was a large amount, $3,000 as a deposit. Most of them didn't put down $3,000 on a deposit. But more importantly, his was held too long. There was a time frame for getting a refund on the credit cards through your own credit card system. My client's was held too long because his was one of the initial orders, but because it was so big, it got pushed back to the end. By the time all of that came about, it was too late. So he did not get that. The one issue that really didn't get a whole lot of play is the general jurisdiction issue. As I indicated before, we believe we have specific jurisdiction. But in general jurisdiction, the issue is whether they do business with sufficient continuity in the state of Illinois to open them up. Thank you. Real briefly, Backyard Buddy, there's evidence in the file. Every single year that my client was around through the year that this happened to him, they attended the Bloomington Gold Auto Show, which was the biggest auto show in the Midwest. They were a vendor. They had signed vendor contracts. That evidence is in the file. They regularly do business in the state of Illinois. LGRT, as an Internet provider or as an Internet business, all of their credit cards went through a Bloomington, Illinois bank. We put that into evidence. Every credit card sale that was on the Internet had to go through that Bloomington, Illinois bank. We have a copy of their contract. We have copies of the – and it was a continuous contract for 12 or 18 months. So every single month they were making payments to the state of Illinois in Bloomington to that bank. So for them to argue that they don't do business on a regular basis in Illinois for general jurisdiction purposes, I find that hard to believe as well. That's all I have unless you have questions. Thank you. Thank you. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible.